JONATHAN R. BASS (State Bar No. 75779)
THOMAS A. HARVEY (State Bar No. 235342)
WILL GRAY (State Bar No. 325657)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663
Email:    ef-jrb@cpdb.com
          ef-tah@cpdb.com
          ef-wag@cpdb.com

Attorneys for Plaintiffs
DOUBLE VEE PROPERTIES, LLC; CALDERA RANCH, LLC; HUNDRED ACRE LLC; and THE HUNDRED ACRE WINE GROUP, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| DOUBLE VEE PROPERTIES, LLC, a Delaware limited liability company; CALDERA RANCH, LLC, a California limited liability company; HUNDRED ACRE LLC, a Nevada limited liability company; and THE HUNDRED ACRE WINE GROUP, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF NAPA, a political subdivision of the State of California; and BRIAN BORDONA, in his official capacity as Director of Planning, Building and Environmental Services, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR TAKING OF PROPERTY WITHOUT JUST COMPENSATION, FOR DEPRIVATION OF RIGHTS UNDER THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS, AND FOR DECLARATORY RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

019525.0001 4870-6399-4493.1

1

**COMPLAINT FOR TAKING OF PROPERTY, FOR DEPRIVATION OF RIGHTS UNDER THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS, AND FOR DECLARATORY RELIEF**

Plaintiffs Double Vee Properties, LLC, Caldera Ranch, LLC, Hundred Acre LLC, and The Hundred Acre Wine Group, Inc. allege as follows:

## INTRODUCTION

1. Plaintiffs grow grapes of superb quality on their land. They are able to do so because of the extraordinary soils on their properties and the beneficial climate with which their properties are blessed. Plaintiffs' properties derive substantial value from the combination of those advantages.

2. The soil on Plaintiffs' properties is ideally suited to produce high quality grapes. The climate in Napa County is ideal for that purpose as well. And Plaintiffs have access, on their own properties, to sufficient water for their agricultural needs.

3. The County has no authority over the quality of the soil on Plaintiffs' properties, nor does it parcel out the sunshine, rainfall, and moderate temperatures that are essential to the production of Plaintiffs' grapes. The County does, however, exercise some degree of lawful authority over Plaintiffs' access to the water that underlies their properties, and it is empowered to exercise certain other regulatory functions with respect to Plaintiffs' businesses. This action concerns the County's abuse of that authority and its unlawful deprivation of Plaintiffs' rights to use and enjoy their own land.

4. As set forth below, the County's lawful authority over Plaintiffs' access to their own water is constrained by superior sources of law, as well as by its own ordinances and regulations. The County has acted in disregard of those constraints, and has wielded its regulatory powers in illegitimate ways, thereby causing harm to Plaintiffs, who bring this action in order to vindicate their rights to use the water to which they are legally entitled.

## THE PARTIES

5. Plaintiff Double Vee Properties, LLC ("Double Vee") is a Delaware limited liability company, engaged in the business of growing grapes on its property, which is located in the City of St. Helena, California.

6. Plaintiff Caldera Ranch, LLC ("Caldera") is a California limited liability company, engaged in the business of growing grapes on its property, which is located in the City of St. Helena, California.

019525.0001 4870-6399-4493.1

2

**COMPLAINT FOR TAKING OF PROPERTY, FOR DEPRIVATION OF RIGHTS UNDER THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS, AND FOR DECLARATORY RELIEF**

7. Plaintiff Hundred Acre LLC ("Hundred Acre") is a Nevada limited liability company, engaged in the business of growing grapes on its property, which is located in the City of St. Helena, California.

8. Plaintiff The Hundred Acre Wine Group, Inc. ("Hundred Acre Wine Group") is a Delaware corporation, engaged in the business of growing grapes on its property, which is located in the City of Calistoga, California.

9. Defendant County of Napa (the "County") is a political subdivision of the State of California.

10. Defendant Brian Bordona is the County's Director of Planning, Building and Environmental Services, and is named herein in his official capacity.

## JURISDICTION

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1367 and 42 U.S.C. § 1983.

12. This Court has personal jurisdiction over the Defendant.

## VENUE

13. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because the claims contained herein arise out of actions taken in the County of Napa.

## DIVISIONAL ASSIGNMENT

14. Pursuant to Civil Local Rule 3-5(b), assignment of this action to any division would be appropriate in light of the similar proximity of each division to Napa County.

## APPLICABLE LAW

I. **California Water Rights Law**

   a. <u>Overlying water rights</u>

15. Water rights in California are usufructuary, meaning that rights holders possess a right to the use of water. *City of Barstow v. Mojave Water Agency*, 23 Cal. 4th 1224, 1237 fn. 7 (2000).

///

///

019525.0001 4870-6399-4493.1

3

**COMPLAINT FOR TAKING OF PROPERTY, FOR DEPRIVATION OF RIGHTS UNDER THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS, AND FOR DECLARATORY RELIEF**

16. "An overlying water right . . . is the right to take water from the ground underneath the land for use on the land. The right is based on the ownership of the land and is appurtenant thereto." *Tehachapi-Cummings Cnty. Water Dist., v. Armstrong*, 49 Cal.App.3d 992, 1001 (1975).

17. Overlying rights are not lost or diminished through non-use. Dormant or unexercised overlying rights have the same priority as exercised overlying rights. *Wright v. Goleta Water Dist.*, 174 Cal. App. 3d 74 (1985).

18. Overlying water rights are correlative, meaning that the rights of each overlying water user within the basin "are mutual and reciprocal." *Tehachapi*, 49 Cal. App. 3d at 1001. "[E]ach has a common right to take all that he can beneficially use on his land if the quantity is sufficient; if the quantity is insufficient, each is limited to his proportionate fair share of the total amount available based upon his reasonable need." *Id.*

19. The determination of reasonable use requires an individualized, comparative assessment of facts:

> [W]here there is insufficient water for the current reasonable needs of all the overlying owners, many factors are to be considered in determining each owner's proportionate share: the amount of water available, the extent of ownership in the basin, the nature of the projected use—if for agriculture, the area sought to be irrigated, the character of the soil, the practicability of irrigation, i.e., the expense thereof, the comparative profit of the different crops which could be made of the water on the land—all these and many other considerations must enter into the solution of the problem.

*Tehachapi*, 49 Cal. App. 3d at 1001-1002.

b. <u>The Sustainable Groundwater Management Act</u>

20. Effective January 1, 2015, the State of California promulgated the Sustainable Groundwater Management Act ("SGMA"). Cal. Water Code §§ 10720 *et seq.* The goal of SGMA is to empower local agencies to achieve "sustainable" groundwater usage throughout the state. It creates a system of Groundwater Sustainability Agencies ("GSAs") responsible for developing Groundwater Sustainability Plans ("GSPs") to achieve SGMA's sustainability goals.

21. The SGMA does not alter the existing scheme of common law California water rights. Cal. Water Code § 10720.5.

///

019525.0001 4870-6399-4493.1

4

**COMPLAINT FOR TAKING OF PROPERTY, FOR DEPRIVATION OF RIGHTS UNDER THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS, AND FOR DECLARATORY RELIEF**

## II. The County's Regulation of Groundwater Use

### a. The County's well permitting is ministerial

22. The County regulates wells through County Code Chapter 13.12. The sole purpose of the chapter is to ensure that the County's groundwater "will not be contaminated or polluted." Ord. § 13.12.010.

23. County Code Chapter 13.12 promulgates a permit scheme managed by Napa's Department of Planning, Building & Environmental Services ("PBES"). It requires that permits be obtained from the Director of PBES prior to "construction, destruction or reconstruction of any well." Ord. § 13.12.260.

24. To obtain a construction permit for a new well, an applicant must demonstrate entitlement to one of two classes of permits based on various factors, such as distance from property and sewer lines (Ord. § 13.12.340), special construction features such as seal thickness and depth (Ord. § 13.12.270.B), and findings from the Director of PBES that "no conditions exist which may result in a pollution or contamination of the ground water." Ord. §§ 13.12.270.A, 13.12.270.B.

25. The County well permitting process is ministerial: if an applicant meets the requirements set out in the County Code, the Director is obliged to issue the permit. Ord. § 13.12.280.B.

### b. Discretionary development projects require a water availability analysis

26. In 2015, PBES created a "Water Availability Analysis" (the "2015 WAA") setting forth the County's procedures for evaluating water use related to discretionary development permit applications. The 2015 WAA requires that a water availability analysis be performed "for any discretionary project that may utilize groundwater or will increase the intensity of groundwater use of any parcel through an existing, improved, or new water supply system."

27. Depending on the quantity of water proposed to be used by the groundwater permit applicant, distance from other wells, and other factors, the 2015 WAA requires the applicant to submit information in one of three "tiers" of informational complexity. The 2015 WAA set out

///

019525.0001 4870-6399-4493.1

5

**COMPLAINT FOR TAKING OF PROPERTY, FOR DEPRIVATION OF RIGHTS UNDER THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS, AND FOR DECLARATORY RELIEF**

"Water Use Criteria" that imposed a one acre-foot per acre per year "acceptable water use screening criterion for parcels located on the Napa Valley Floor."

## FACTUAL BACKGROUND

### I. The County's Implementation of SGMA for the Napa Valley Subbasin

28. The Napa Valley Subbasin (the "Basin") sits in the watershed formed by the Napa River. It underlies the cities of Calistoga, St. Helena, Yountville, and Napa, and surrounding lands.

29. In December 2019, the County established a GSA for the Basin as required by SGMA. The Napa County Board of Supervisors (the "Board") is the GSA for the Basin.

30. The Board released its GSP in January of 2022. The Board's GSP established a sustainable yield of 15,000 acre feet of groundwater for pumping annually.

31. On February 2, 2022, the Board met and directed the Director of PBES to revise the WAA and update the County Code.

### II. The Governor's Executive Order

32. On March 28, 2022, Governor Newsom issued Emergency Executive Order N-7-22 (the "EO"). The EO imposes additional review of well permitting applications by local agencies and GSAs.

33. Paragraph nine of the EO provides:

> To protect health, safety, and the environment during this drought emergency, a county, city, or other public agency shall not:
>
> [. . .]
>
> b. Issue a permit for a new groundwater well or for alteration of an existing well without first determining that extraction of groundwater from the proposed well is (1) not likely to interfere with the production and functioning of existing nearby wells, and (2) not likely to cause subsidence that would adversely impact or damage nearby infrastructure.

### III. The County Imposes an Unlawful Limitation on Water Use for Ministerial Well Permit Applications, and Refuses to Process Plaintiffs' Applications

34. On June 7, 2022, the PBES Director presented the Board with a memorandum (the "PBES Memorandum") analyzing methods of compliance with the EO.

019525.0001 4870-6399-4493.1

6

**COMPLAINT FOR TAKING OF PROPERTY, FOR DEPRIVATION OF RIGHTS UNDER THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS, AND FOR DECLARATORY RELIEF**

35. The PBES Memorandum states that "the following conditions are proposed and considered responsive to the Governor's EO for well permits for non-exempt wells located within the Napa Valley Subbasin:  1. The proposed groundwater use does not exceed 0.3 acre-feet per acre . . . . ; 2. The proposed well is located at least 1,500 feet from a stream; and 3. The proposed well is located at least 500 feet from other existing water supply wells."  The PBES Memorandum referred to these three well permitting conditions as "interim reduced water use criteria."

36. The well permitting criteria set forth in the PBES Memorandum are contrary to the County's existing well and groundwater permitting schemes.

37. There is no scientific or rational justification for applying a 0.3 acre-foot limitation with respect to new well permit applicants throughout the Basin, or with respect to Plaintiffs' properties specifically.

38. The PBES Memorandum did not account for the top priority of unexercised overlying groundwater rights, which are superior to all non-overlying rights.  Nor did the PBES Memorandum establish separate procedures for new well permittees taking groundwater for lower-priority non-overlying uses.  Moreover, the PBES Memorandum contained no findings or proposed findings with respect to the reasonableness or beneficial nature of groundwater use by any individual or class of individuals, as required by California water rights law.

39. The PBES Memorandum states that the 0.3 acre-foot limitation would apply only to new permits: "The reduced water use criteria of 0.3 acre-feet per acre will be applied to new non-exempt well permits.  Permits for replacement wells, or permits for alterations to existing wells, will require that those wells conform to water use that is no more than the current water use." *Id.* at 9.  In other words, the PBES Memorandum purported to grandfather in the water consumption levels by existing well permit holders while depriving new permit applicants of their coequal right to the water.

40. On June 8, 2022, Double Vee and Caldera filed permit applications to construct new wells on their properties.  On June 17, 2022, Hundred Acre filed a permit application to construct a new well on its property.

///

019525.0001 4870-6399-4493.1

7

**COMPLAINT FOR TAKING OF PROPERTY, FOR DEPRIVATION OF RIGHTS UNDER THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS, AND FOR DECLARATORY RELIEF**

41. Under applicable law, Plaintiffs' existing permit applications should have been processed on a ministerial basis.

42. Rather than processing Plaintiffs' permit applications as required, on September 23, 2022, PBES staff informed Hundred Acre that: "In order for us to issue the permit, a Tier 1 water budget must be prepared for this parcel and since the proposed well appears to be located within 1500' of the Napa River a Tier 3 analysis will have to be completed." Nearly one year later, on August 29, 2023, PBES staff similarly advised Caldera that it was required to submit a Tier 1 water budget and a Tier 3 analysis.

43. Under the County's revised policies, a Tier 1 water budget includes a required commitment by the applicant to use no more than 0.3 acre-feet of water per acre serviced by the well annually. PBES had never required such analyses as part of its ministerial well permitting scheme set out in County Code Chapter 13.12.

44. Based on PBES's September 23, 2022 and August 29, 2023 communications, Plaintiffs are informed and believe that PBES has implemented its interim reduced water use criteria, and that it will withhold new well permits unless the applicant agrees to its unlawful requirement that the applicant commit to using no more than 0.3 acre-feet of water per acre serviced by the proposed well annually.

45. Hundred Acre Wine Group would submit an application for a new well permit with respect to its property but for the fact that it knows that the County would condition issuance of the permit on Hundred Acre Wine Group's acceptance of the unlawful restriction on water use.

46. On or about January 12, 2023, the PBES Director presented "new well permitting standards" to the Board, along with an update regarding PBES's revisions to the Water Availability Analysis. The new well permitting policies did not substantially change the interim reduced water use criteria. The interim reduced water use criteria and new well permitting policies are hereinafter referenced collectively as the "New Well Policies."

///

///

///

IV. **Neither SGMA Nor the Executive Orders Authorize the County to Deny Plaintiffs the Use of Their Property or Their Water Rights**

47. SGMA requires that the County establish a sustainability goal. The Governor's Executive Orders require the County to grant well permit applications only if doing so will not result in overdraft. In designing a policy in conformity with this standard, the County must avoid violating California water rights law, which neither SGMA nor the Executive Orders alter.

48. The County has implemented New Well Policies that violate California water rights law by failing to take into account the senior priority of dormant overlying rights holders.

49. The New Well Policies only apply to new well permit applicants—i.e., overlying rights holders whose rights are "dormant," since they are not using some or all of the groundwater to which they are entitled. Users with dormant rights enjoy coequal rights to those of other overlying rights holders, including "active" users—that is, land owners with overlying water rights who are already using their reasonable share of the water. Prior to the promulgation of the New Well Policies, dormant overlying groundwater rights holders in the Basin enjoyed a right to apply for ministerial well permit applications from the County, and to access their full water entitlement, subject only to the limitations of reasonable and beneficial use.

50. By implementing the New Well Policies, the County has deprived Plaintiffs, and other dormant rights holders, of access to their reasonable, correlative share of the available groundwater. This action deprives Plaintiffs of their vested rights under California water rights law, and constitutes a taking of property without just compensation.

**FIRST CLAIM FOR RELIEF**

(The Takings Clause of the Fifth Amendment to the United States Constitution)

51. Plaintiffs restate and incorporate by reference all allegations above as if fully set forth herein.

52. Plaintiffs have a right to the reasonable and beneficial use of the groundwater beneath their properties.

53. The Fifth Amendment to the United States Constitution prohibits the taking of private property without due process, or for public use without just compensation.

019525.0001 4870-6399-4493.1

9

COMPLAINT FOR TAKING OF PROPERTY, FOR DEPRIVATION OF RIGHTS UNDER
THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS, AND FOR DECLARATORY RELIEF

54. Under California water law, Plaintiffs enjoy vested private property rights to make such use of the water under their land as is reasonably required for the beneficial use to be served.

55. As implemented, the County's New Well Policies impair Plaintiffs' rights to access and make use of the groundwater to which they have vested rights, specifically by requiring Plaintiffs to commit to a water use limitation of 0.3 acre-feet of water per acre annually as a condition of any new well permit.

56. The County has allocated to Plaintiffs a lesser share of water relative to that used by existing well permittees, who remain entitled to more than 0.3 acre-feet of water per acre annually.

57. Existing permit holders operating vineyards of the nature operated by Plaintiffs on their land enjoy the valuable right to use up to 1.0 acre-foot of water per acre annually.

58. The County's implementation of the New Well Policies constitutes a taking of Plaintiffs' groundwater rights under the Fifth Amendment to the United States Constitution.

59. The County's actions have deprived Plaintiffs of the use of their groundwater rights, which has substantially impaired the value of Plaintiffs' properties.

## SECOND CLAIM FOR RELIEF

(The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution)

60. Plaintiffs restate and incorporate by reference all allegations above as if fully set forth herein.

61. Plaintiffs, as new well permit applicants, are subject to the New Well Policies, whereas existing permit holders are not subject to the restrictions of those policies.

62. The County has no rational basis for imposing disparate impacts on dormant overlying groundwater rights holders as a subclass of overlying groundwater rights holders within Napa County.

63. The County's implementation of the New Well Policies violates the equal protection clause of the Fourteenth Amendment to the United States Constitution.

64. The County's discriminatory implementation of the New Well Policies has deprived Plaintiffs of the full use of their groundwater rights, thereby substantially impairing the value of Plaintiffs' properties.

019525.0001 4870-6399-4493.1

10

COMPLAINT FOR TAKING OF PROPERTY, FOR DEPRIVATION OF RIGHTS UNDER THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS, AND FOR DECLARATORY RELIEF

**THIRD CLAIM FOR RELIEF**

(Fifth and Fourteenth Amendments to the United States Constitution and 28 U.S.C. § 1983)

65. Plaintiffs restate and incorporate by reference all allegations above as if fully set forth herein.

66. PBES Director Bordona is an official of the County of Napa. His actions, and, in particular, his refusal to process well permit applications of Plaintiffs Double Vee, Caldera, and Hundred Acre, were made under color of the law. PBES Director Bordona has implemented a policy or custom of denying dormant overlying water rights holders access to, and use of, their water rights. This custom or policy violates the Fourteenth and Fifth Amendments of the United States Constitution, as alleged above.

67. PBES Director Bordona's refusal to process well permit applications unless the applicant accepts unlawful restrictions has deprived Plaintiffs of their constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution.

68. As a proximate consequence of the refusal to process Plaintiffs' well permit applications, Plaintiffs have been deprived of their rights to make use of their valuable water rights.

**FOURTH CLAIM FOR RELIEF**

(Declaratory Relief)

69. Plaintiffs restate and incorporate by reference all allegations above as if fully set forth herein.

70. An actual controversy has arisen and now exists between the parties relating to Defendants' refusal to process Plaintiffs' well permit applications, and to Defendants' announced policy to subject Plaintiffs' current and future well permit applications to the New Well Policies.

71. Plaintiffs contend that their ownership of the Properties carries with it overlying water rights to extract groundwater drawn from the underlying aquifer and apply that water to reasonable and beneficial use on the Properties, and that their overlying groundwater rights—both active and unexercised—are correlative to all other overlying groundwater rights in the basin, and senior in priority to all appropriative rights.

///

019525.0001 4870-6399-4493.1

11

COMPLAINT FOR TAKING OF PROPERTY, FOR DEPRIVATION OF RIGHTS UNDER
THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS, AND FOR DECLARATORY RELIEF

72. Plaintiffs further contend that the County's implementation of the New Well Policies, limiting Plaintiffs' rights as overlying landowners to extract and use groundwater on their properties, violates California law in at least four respects:

   a. The New Well Policies are unsupported by findings regarding the reasonableness or beneficial nature of use by appropriative users within the Basin;

   b. The New Well Policies are unsupported by findings regarding the reasonableness, beneficial nature, or wastefulness of use by other overlying users within the neighborhood of Plaintiffs' properties, or within the Basin as a whole;

   c. The New Well Policies contain a blanket 0.3 acre-foot use limitation for every new well permit application, without individualized, fact-based findings of reasonable and beneficial use; and

   d. By applying the 0.3 acre-foot use limitation on new well permit applicants only, the New Well Policies impermissibly discriminate against dormant overlying rights holders.

73. Defendants contend to the contrary with respect to each of the above-described issues.

74. A declaratory judgment is necessary in that Plaintiffs contend and Defendants deny that the County's New Well Policies violate Plaintiffs' California water rights.

**FIFTH CLAIM FOR RELIEF**

**(**Declaratory Relief)

75. Plaintiffs restate and incorporate by reference all allegations above as if fully set forth herein.

76. The New Well Policies purport to override the County's well permitting laws as set forth in Chapter 13.12 of the County Code, which grants the Director of PBES no authority to impose a 0.3 acre-foot limitation upon new well permit applicants. Plaintiffs can only make use of their water rights by drawing groundwater from wells on their properties.

77. Plaintiffs' properties have diminished in value due to the County's unlawful attempt to restrict Plaintiffs' access to their water rights.

78. Plaintiffs Double Vee, Caldera and Hundred Acre applied for well permits to access their water rights, and Plaintiff Hundred Acre Wine Group would do so but for the County's policy of withholding such permits unless the applicant accepts unlawful restrictions on water use. The well permit applications submitted by Plaintiffs Double Vee, Caldera and Hundred Acre met the ministerial requirements of approval, and the well permit application that Hundred Acre wine Group would submit would meet those ministerial requirements of approval as well.

79. A declaratory judgment is necessary in that Plaintiffs contend, and the County denies, that the County's refusal to issue well permits unless the applicant accepts unlawful restrictions on their use of water is unlawful.

## SIXTH CLAIM FOR RELIEF

(First Amendment to the United States Constitution and 28 U.S.C. § 1983)

80. On October 6, 2022, Plaintiff Hundred Acre Wine Group filed a complaint in Napa County Superior Court against the County. *Hundred Acre Wine Group v. County of Napa*, Napa County Sup. Ct. No. 22CV001166. The complaint sought declaratory relief regarding the County's application of its conservation regulations to Hundred Acre Wine Group's removal of burned trees and vegetation following a wildfire that scorched its property.

81. On November 28, 2022, the County filed a cross-complaint against Hundred Acre Wine Group. The County's cross-complaint asserted claims against Hundred Acre Wine Group for minor alleged code violations that the County has routinely ignored on nearby properties, and that are rarely the subject of any level of County enforcement actions, much less formal litigation. For example, the County claimed that Plaintiff Hundred Acre Wine Group had engaged in "unpermitted earthmoving" when removing the dead trees. It further accused Hundred Acre Wine Group of "maintaining a partially constructed building or structure that was not completed within a reasonable time," "maintaining an electrical entry gate that was erected without a permit," "maintaining a garage that has been converted to habitable space without a permit," and "maintaining three stone retaining walls that were installed without a permit."

82. On information and belief, the County asserted its cross-claims against Hundred Acre Wine Group in retaliation for Hundred Acre Wine Group's declaratory relief lawsuit, and with the

goal of chilling the exercise of Hundred Acre Wine Group's First Amendment Rights to challenge the County's application of its conservation regulations.

83. Plaintiff Hundred Acre Wine Group's filing of its lawsuit against the County was a constitutionally-protected activity and a lawful exercise of its First Amendment rights.

84. The County has acted in a manner calculated to retaliate against Plaintiff Hundred Acre Wine Group, and to deter it, and other landowners, from challenging the County's arbitrary exercise of its regulatory authority.

85. The County's actions, taken under color of law, have deprived Plaintiff Hundred Acre Wine Group of rights, privileges, and immunities secured by the Constitution and laws.

86. The County's retaliatory acts have caused Plaintiff Hundred Acre Wine Group to suffer an injury of a nature and severity that would likely chill a person of ordinary firmness from continuing to engage in its protected activity, and the County should be enjoined from continuing to engage in such retaliation.

87. As a direct and proximate result of the County's actions, Plaintiff Hundred Acre Wine Group has suffered and will continue to suffer damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

1. For damages in the amount proven at trial;

2. For injunctive relief;

3. For a declaration that the County's implementation of the New Well Policies is in violation of the California law of groundwater rights, the California Government Code, and the United States Constitution;

///

///

///

///

///

019525.0001 4870-6399-4493.1

14

**COMPLAINT FOR TAKING OF PROPERTY, FOR DEPRIVATION OF RIGHTS UNDER THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS, AND FOR DECLARATORY RELIEF**

4. For reasonable attorneys' fees and costs in the prosecution of this action pursuant to law, including 42 U.S.C. § 1988 and California Code of Civil Procedure section 1021.5; and

5. For such other and further relief as this Court may deem just and proper.

DATED: September 5, 2023               COBLENTZ PATCH DUFFY & BASS LLP

By:     */s/ Jonathan R. Bass*
JONATHAN R. BASS
Attorneys for Plaintiffs
DOUBLE VEE PROPERTIES, LLC, CALDERA RANCH, LLC, HUNDRED ACRE LLC and THE HUNDRED ACRE WINE GROUP, INC.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

DATED: September 5, 2023               COBLENTZ PATCH DUFFY & BASS LLP

By:     */s/ Jonathan R. Bass*
JONATHAN R. BASS
Attorneys for Plaintiffs
DOUBLE VEE PROPERTIES, LLC, CALDERA RANCH, LLC, HUNDRED ACRE LLC and THE HUNDRED ACRE WINE GROUP, INC.

019525.0001 4870-6399-4493.1

15

**COMPLAINT FOR TAKING OF PROPERTY, FOR DEPRIVATION OF RIGHTS UNDER THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS, AND FOR DECLARATORY RELIEF**