Valerie C. Kincaid (SBN 231815)
Jonathan R. Marz (SBN 221188)
**PARIS KINCAID WASIEWSKI, LLP**
1800 J Street
Sacramento, CA 95811
Telephone:    (916) 993-3962
Facsimile:    (916) 264-2040
Email: vkincaid@pariskincaid.com
        jmarz@pariskincaid.com

Attorneys for Defendant
NAPA COUNTY, and BRIAN BORDONA

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| DOUBLE VEE PROPERTIES, LLC, a Delaware limited liability company; CALDERA RANCH, LLC, a California limited liability company; HUNDRED ACRE LLC, a Nevada limited liability company; and THE HUNDRED ACRE WINE GROUP, INC., a Delaware corporation<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF NAPA, a political subdivision of the State of California; and BRIAN BORDONA, in his official capacity as Director of Planning, Building and Environmental Services<br><br>Defendant(s). | **Case No.:    3:23-cv-04546-AGT**<br><br>**DEFENDANTS COUNTY OF NAPA AND BRIAN BORDONA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS MOTION TO DISMISS**<br><br>Hearing Date:    December 8, 2023<br>Hearing Time    10:00 a.m<br>Courtroom:    Courtroom A, 15th Floor<br>Judge:    Magistrate Judge Alex G. Tse<br>Complaint    August 8, 2023<br>Trial Date:    Not Set |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

Please take notice that on December 8, 2023 at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom A of the above-entitled court, Hon. Alex G. Tse presiding, located at 450 Golden Gate Avenue, San Francisco, California, Defendants Napa County and Brian Bordona (Defendants) will move, and hereby do move, this Court for an Order granting their Motion to Dismiss Plaintiffs' Complaint, and each cause of action therein, without leave to amend pursuant to Federal Rules of Civil Procedure (FRCP), Rules 12(b)(1) and/or 12(b)(6).

1

As grounds for this motion, Defendants submit as follows: Plaintiffs Double Vee Properties, LLC (Double Vee), Caldera Ranch, LLC (Caldera), Hundred Acre LLC (Hundred Acre), and The Hundred Acre Wine Group, Inc. (Hundred Acre Wine Group) (collectively Plaintiffs) assert six federal and state claims against Defendants. However, (1) the Court lacks subject matter jurisdiction as to Plaintiffs' first and third claims pursuant to FRCP 12(b)(1); (2) none of Plaintiffs' six claims state a claim as to which they are entitled to relief and are subject to dismissal pursuant to FRCP 12(b)(6); and (3) this Court should decline to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiffs' state law claims, which predominate over the federal claims.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, Defendants' Request for Judicial Notice, all pleadings and papers filed in this matter and such further oral and documentary evidence and argument as may be presented at or before the hearing on this Motion.


DATED: October 30, 2023

**PARIS KINCAID WASIEWSKI, LLP**

By:

VALERIE C. KINCAID
JONATHAN R. MARZ

Attorneys for Defendants
NAPA COUNTY and BRIAN BORDONA

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 6

II.  RELEVANT LEGAL AND FACTUAL BACKGROUND ............................................ 7

  A.   Relevant Regulatory Activities Affecting Groundwater ......................................... 7

    1.   SGMA ............................................................................................................... 7

    2.   The Governor's EO .......................................................................................... 7

    3.   The County's Interim New Well Policies ......................................................... 8

  B.   Plaintiffs' General Contentions .............................................................................. 10

  C.   Hundred Acre Wine Group's State Court Litigation Against the County ....................... 11

III. LEGAL STANDARD .................................................................................................. 12

  A.   Lack of Subject Matter Jurisdiction and FRCP 12(b)(1) ....................................... 12

  B.   Failure to State a Claim and FRCP 12(b)(6) .......................................................... 13

IV. ARGUMENT ............................................................................................................... 14

  A.   Plaintiffs' First, Second, Third, Fourth, and Fifth Claims Are Really Challenges to the County's Implementation of Policies and Procedures In Response to a Governor's Emergency Executive Order and Are Time Barred ........................................................................ 14

  B.   Plaintiffs' First Claim, for Taking, Fails for Lack of Subject Matter Jurisdiction and Fails to Allege Facts Sufficient to State a Claim ................................................................... 15

    1.   Plaintiffs' Takings Claim is Unripe .............................................................. 15

    2.   The Claim is Factually Deficient .................................................................. 16

  C.   Plaintiffs' Second Claim, for Alleged Equal Protection Violations, Fails to Allege Facts Sufficient to State a Claim ..................................................................................... 18

  D.   Plaintiffs' Third Claim, for Alleged Due Process Violations, Fails for Lack of Subject Matter Jurisdiction, and Fails to Allege Facts Sufficient to State a Claim ............................... 20

    1.   The Due Process Claim is Unripe ................................................................. 20

    2.   The Due Process Claim is Preempted ........................................................... 20

    3.   The Claim is Factually Deficient .................................................................. 21

  E.   Plaintiffs' Fourth and Fifth Claims, for Declaratory Relief, Fail to Allege Facts Sufficient to State a Claim, and are Outside of the Court's Jurisdiction if the Federal Claims Fail ......... 22

  F.   Hundred Acre Wine Group's Sixth Claim, for Retaliation, Fails to State a Claim ........... 23

V.  CONCLUSION ........................................................................................................... 24

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Cases**

3

*Aids Healthcare Foundation, Inc. v. City & County of San Francisco* (N.D.Cal. 2016) 208

4

F.Supp.3d 1095 ................................................................................................................ 17

*Albright v. Oliver*, 510 U.S. 266 (1994) ........................................................................... 24

5

*Allegretti & Co. v. County of Imperial* (2006) 138 Cal. App. 4th 1261 ......................... 20, 21, 22

6

*Antelope Valley Groundwater Cases* (2021) 62 Cal.App.5th 992 ...................................... 22

7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 15

8

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988) ................................... 14

9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 15

10

*Cedar Point Nursery v. Hassid*, ___U.S.___ (2021) (141 S.Ct. 2063) .............................. 19

11

*Christian Gospel Church, Inc. v. San Francisco*, 896 F.2d 1221 (9th Cir. 1990) ............ 21

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) ...................................... 15

12

*Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851 (9th Cir. 2007)..................... 23

13

*Fikre v. Fed. Bureau of Investigation*, 35 F.4th 762 (9th Cir. 2022) ............................... 24

14

*Halverson v. Skagit County*, 42 F.3d 1257 (9th Cir. 1994) ...................................... 23, 24

15

*Herrington v. County of Sonoma*, 857 F.2d 567 (9th Cir. 1988) ...................................... 23

16

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) .......................................................... 8

17

*Huynh v. Quora, Inc.*, 2019 U.S.Dist.LEXIS 235733, at *36-37 (N.D.Cal. Dec. 19, 2019, No. 18-

cv-07597-BLF) ................................................................................................................ 25

18

*Jacobs, Visconsi & Jacobs Co. v. Lawrence*, 927 F.2d 1111 (10th Cir. 1991) ............... 21

19

*Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116 (9th Cir. 2008)............................. 15

20

*Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227 (9th Cir. 1994) ................................... 21

21

*Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019).................................................................. 18

22

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ........................................................... 14

23

*Livid Holding Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940 (9th Cir. 2005) ........... 15

*Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700 (N.D. Cal. 2009) ................ 25

24

*Manistee Town Center v. City of Glendale*, 227 F.3d 1090 (9th Cir. 2000)..................... 26

25

*Maritrans Inc. v. United States*, 342 F.3d 1344 (Fed.Cir. 2003) .................................... 19

26

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ..................................................... 13

27

*N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478 (9th Cir. 2008) .................................. 24

28

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ......................................................... 14, 15

4

DEFENDANTS COUNTY OF NAPA AND BRIAN BORDONA'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS MOTION TO DISMISS
Case No.: 3:23-cv-04546-AGT

*Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480 (9th Cir. 2019) ...................................... 14

*Neitzke v. Williams*, 490 U.S. 319 (1989) ................................................................... 15

*Pakdel v. City & Cty. of San Francisco*, 141 S. Ct. 2226 (2021) ................................................. 18

*Pakdel v. City & Cnty. of San Francisco* 636 F. Supp. 3d 1065 (N.D.Cal. 2022)................. 19, 20

*Penn Central Transp. Co. v. City of New York*, 438 U.S. 104 (1978) ........................................ 19

*Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946

    F.3d 1100 (9th Cir. 2020) ............................................................... 14

*Rivera v. BAC Home Loans Servicing, L.P.*, 756 F.Supp.2d 1193 (N.D. Cal. 2010) .................. 15

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984) .................................................... 19

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004)............................................ 14

*Save Lafayette Trees v. City of Lafayette* (2019) 32 Cal.App.5th 148 16, 17*Shanks v. Dressel*, 540

    F.3d 1082 (9th Cir. 2008) ............................................................... 24

*Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006)........................................................ 26, 27

*Spokeo, Inc. v. Robins* (*Spokeo II*), 578 U.S. 330 (2016) .................................................. 14

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977)........................ 24

*Warth v. Seldin*, 422 U.S. 490 (1975) ................................................................... 14

*Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) 18

*Woods v. U.S. Bank N.A.*, 831 F.3d 1159 (9th Cir. 2016)........................................... 14

**State Statutes**

Cal. Water Code §§ 10720.1, 10723.8, 10725, 10727...................................................... 8

Cal. Gov. Code § 65009(c)(1)(E) ....................................................................... 16, 17

Cal. Gov. Code § 65901(a) .......................................................................... 16

**Fed. R. Civ. Proc.**

12(b)(1) ..................................................................................... 13

12(b)(6) ..................................................................................... 14

**Other Authorities**

*Ferrari v. Mercedes-Benz USA, LLC*, 2016 U.S.Dist.LEXIS 171559, at *3 (N.D.Cal. Dec. 12,

    2016, No. 15-cv-04379-YGR) ............................................................... 26

*Miller v. Sec. Life of Denver Ins. Co.*, 2012 U.S.Dist.LEXIS 41057, at *15-16 (N.D.Cal. Mar. 26,

    2012, No. C 11-1175 PJH)........................................................ 25

*Thomas v. Cnty. Of Humboldt*, 2023 U.S.Dist.LEXIS 83938, at *58-59 (N.D.Cal. May 12, 2023,

    No. 22-cv-05725-RMI)............................................................... 23

## MEMORANDUM OF POINTS AND AUTHORITIES
## I.   <u>INTRODUCTION</u>

This lawsuit concerns Napa County's (County) management of groundwater resources within its boundaries. That task requires complex decisions that consider and balance social, economic, environmental, and other important competing interests. Some of the County's local groundwater management decisions take their cues from the state, including the Sustainable Groundwater Management Act (SGMA, Cal. Water Code §§ 10720 *et seq.*), and Emergency Executive Orders issued by the Governor in response to persistent, extreme drought conditions.

On March 28, 2022, Governor Newsom issued Emergency Executive Order N-7-22 (EO), in which he reaffirmed certain prior emergency drought proclamations and prohibited counties from approving well permits except in accordance with the EO. To comply with the EO, the County's response, in part, was to temporarily lower its preexisting limitation on groundwater pumping for new groundwater wells from 1.0 acre-feet of water per acre annually to 0.3 acre-feet, while permits for alterations or replacement wells are limited to their current water use.

Plaintiffs are commercial grape growers who allege that the County's temporary lowering of groundwater extraction limitations constitutes an unlawful taking, deprives them of equal protection relative to other alleged groundwater rights holders, and that the County's filing of a cross-complaint against one of the plaintiffs in an unrelated land use dispute—which has already led to injunctive relief in the County's favor—is unlawfully retaliatory. Notably, Plaintiffs do not contend the County lacks the authority to limit groundwater extractions; to the contrary, they admit that authority and necessarily concede that the prior 1.0 acre-feet limitation they yearn for is a reasonable exercise of the County's authority. Regardless, however, Plaintiffs ultimately challenge the County's implementation of policies and procedures in response to the EO but the time to do so—ninety (90) days after their June 7, 2022, approval and implementation—has long since passed. Further, Plaintiffs' federal claims are unripe, depriving this Court of subject matter jurisdiction, or fail to state valid claims, and its state claims are redundant or fail for lack of jurisdiction upon dismissal of the federal claims. The claims are not salvageable by amendment and should be dismissed without leave to amend.

## II. RELEVANT LEGAL AND FACTUAL BACKGROUND[1]

**A.    Relevant Regulatory Activities Affecting Groundwater**

### 1. SGMA

In 2014 the California Legislature adopted SGMA, comprehensive legislation intended to enhance local management of groundwater; provide authority for the creation of local groundwater sustainability agencies (GSA); and provide those agencies with the authority and technical and financial assistance necessary to sustainably manage groundwater. (Cal. Water Code § 10720.1.) SGMA's substantive requirements are implemented by GSAs (Cal. Water Code § 10725), which may be formed by any local agency or combination of local agencies overlying a groundwater basin (Cal. Water Code § 10723.8). The principal tool employed by each GSA to achieve sustainable groundwater management is a GSP. (Cal. Water Code § 10727.)

"The Napa Valley Subbasin (the "Basin") sits in the watershed formed by the Napa River. It underlies the cities of Calistoga, St. Helena, and Napa, and surrounding lands." (Complaint at ¶ 28.) The subbasin covers approximately 45,895 acres. (Request for Judicial Notice (RJN) No. 1 (California Department of Water Resources, Groundwater Basin Bulletin 118, Napa Valley Subbasin). In around December 2019, the County established a GSA for the Basin as required by SGMA. (Complaint at ¶ 29.) The County's Board of Supervisors serves as the Board of Directors for the GSA. (*Id.*) In around January 2022, the GSA released its GSP. (*Id.* at ¶ 30.) That GSP "established a sustainable yield of 15,000 acre-feet of groundwater for pumping annually." (*Id.*)

### 2. The Governor's EO

The EO was issued on March 28, 2022, owing to the "states of emergency that continue today and exist across all the counties of California, due to extreme and expanding drought conditions." (Complaint at ¶¶ 32-33; RJN No. 2 (EO) at p. 1.) The EO orders in relevant part that:

> 9. To protect health, safety, and the environment during this drought emergency, a county, city, or other public agency shall not:
>
> a. Approve a permit for a new groundwater well or for alteration of an existing well in a basin subject to the Sustainable Groundwater

---

[1] Except for the matters for which judicial notice is sought, the facts herein are taken from Plaintiffs' Complaint, which for purposes of this Motion to Dismiss only are accepted as true.

Management Act and classified as medium- or high-priority without first obtaining written verification from a Groundwater Sustainability Agency managing the basin or area of the basin where the well is proposed to be located that groundwater extraction by the proposed well would not be inconsistent with any sustainable groundwater management program established in any applicable Groundwater Sustainability Plan adopted by that Groundwater Sustainability Agency and would not decrease the likelihood of achieving a sustainability goal for the basin covered by such a plan; or

b. Issue a permit for a new groundwater well or for alteration of an existing well without first determining that extraction of groundwater from the proposed well is (1) not likely to interfere with the production and functioning of existing nearby wells, and (2) not likely to cause subsidence that would adversely impact or damage nearby infrastructure.

(EO at p. 1, ¶ 9.)

### 3. The County's Interim New Well Policies

On June 7, 2022, the County's Director of Planning, Building, and Environmental Services (PBES) appeared before the Board of Supervisors to "request[] acceptance of and direction regarding procedures to implement the Governor's Executive Order N-7-22, which relates to well permitting during the declared drought emergency." (RJN Nos. 3-4_(Legislation text for File # 22-1196).) Those policies and procedures are set forth in "Napa County and GSA Response to the Governor's Emergency Executive Order N-7-22."[2] (RJN No. 5 (New Well Policies).) The New Well Policies state in relevant part:

In consideration of the EO requirements, the following conditions are proposed and considered responsive to the Governor's EO for well permits for non-exempt wells located within the Napa Valley Subbasin:

1. The proposed groundwater use does not exceed 0.3 acre-feet per acre,

2. The proposed well is located at least 1,500 feet from a stream, and

3. The proposed well is located at least 500 feet from other existing water supply wells.

---

[2] Plaintiffs' Complaint refers to the "interim reduced water use criteria and new well permitting policies" adopted by the Board of Supervisors as the "'New Well Policies'" in their Complaint. (Complaint at ¶ 46.) To help avoid confusion, Defendants will refer to the Napa County and GSA Response to the Governor's Emergency Executive Order N-7-22 as the New Well Policies.

1       Proposed wells that do not meet the above three criteria may still be
2   responsive to the Governor's EO but will require additional
    information and/or analyses to demonstrate that the proposed well
3   is consistent with the GSP and other aspects of the EO.

4       Well permits for non-exempt wells in the Napa Valley Subbasin will
require written verification to be provided by the GSA to Napa
5   County PBES Department stating that the proposed well and its
operation will be consistent with the Napa Valley Subbasin
6   Groundwater Sustainability Plan (GSP). The Napa Valley Subbasin
GSP Executive Summary (2022) is included in Attachment A. The
7   complete Napa Valley Subbasin GSP is at
https://www.countyofnapa.org/3218/GSP-Sections.

8   (New Well Policies at p. 2.) The New Well Policies also state in relevant part:

9       In consideration of the EO requirements, the following conditions
are proposed and considered responsive to the Governor's EO for
10   well permits for non-exempt wells located outside the Napa Valley
Subbasin. Permits for wells located outside the Napa Valley
11   Subbasin do not require written verification by the GSA.

12       1. The proposed well is located at least 1,500 feet from a stream (as
provided for in the Napa County Water Availability Analysis
13   (WAA; 2015) when substantial evidence in the record determines
the need for such an analysis); and
14
    2. The proposed well is located at least 500 feet from other existing
15   water supply wells.

16       Proposed wells that do not meet the above criteria may still be
responsive to the Governor's EO and/or the WAA but will require
17   additional information and/or analyses to demonstrate that the
proposed well is consistent with the objectives of Napa County's
18   WAA, or it can be shown that the proposed well is not likely to
interfere with the production and functioning of existing nearby
19   wells.

20   (New Well Policies at p. 2) The New Well Policies further state in relevant part:

21       Historically, prior to the development of the GSP, the 1 acre-foot
per acre per year was used as a guide for groundwater use on the
22   Napa Valley floor (see more information on the history of the WAA
in the Napa Valley Subbasin GSP). Since the adoption of the GSP
23   and the development of the sustainable yield estimate of 15,000
acre-feet per year, the Napa County GSA and the Napa County
24   Board of Supervisors (BOS) have recognized the need to revise the
County's Groundwater Ordinance and the WAA. In February 2022,
25   the County BOS approved this action. **While revisions are being
made to the Groundwater Ordinance and the WAA, and in
26   consideration of the Governor's EO, the County plans to adopt
an interim reduced water use criteria. Based on the total
27   Subbasin area of 45,900 acres and the estimated sustainable
yield of 15,000 acre-feet, the interim water use criteria for the
28   Subbasin is 0.3 acre-feet per acre.**

This reduced interim water use criteria will remain in effect with the Governor's EO and may be adjusted (either up or down) as revisions to the Groundwater Ordinance and the WAA are considered, the Napa County Technical Advisory Group is established, the workplans approved by the Napa County GSA are prepared in 2022-2023 (including the Water Conservation and the Groundwater Pumping Reduction Workplans), and ongoing monitoring and analysis of the sustainable management criteria for all six sustainability indicators continue on an ongoing basis.

**The reduced water use criteria of 0.3 acre-feet per acre will be applied to new non-exempt well permits. Permits for replacement wells, or permits for alterations to existing wells, will require that those wells conform to water use that is no more than the current water use.**

(*Id.* at pp. 8 (emphasis in original).) After receiving public comment and deliberating, the Board of Supervisors unanimously accepted the interim New Well Policies. (RJN No. 6 (Minutes for June 7, 2022, Napa County Board of Supervisors meeting (File # 22-1196).)

B.      **Plaintiffs' General Contentions**

Plaintiffs are commercial grape growers who own property in the County. (Complaint at ¶¶ 1-2, 5-8.) Plaintiffs allege they have "sufficient water for their agricultural needs" from groundwater below their properties. (*Id.* at ¶ 2.) Plaintiffs admit the County "does . . . exercise some degree of lawful authority over Plaintiffs' access to the water that underlies their properties." (Complaint at ¶ 3.) However, Plaintiffs allege the New Well Policies, specifically the "interim reduced water use criteria," are contrary to the County's existing well and groundwater permitting schemes," and that "[t]here is no scientific or rational justification for applying a 0.3 acre-feet limitation with respect to new well permit applicants throughout the Basin, or with respect to Plaintiffs' properties specifically." (*Id.* at ¶¶ 36-37.) Plaintiffs further allege the New Well Policies fail to (1) "account for the top priority of unexercised overlying groundwater rights, which are superior to all non-overlying rights"; (2) "establish separate procedures for new well permittees taking groundwater for lower-priority non-overlying uses"; or (3) "contain[] findings or proposed findings with respect to the reasonableness or beneficial nature of groundwater use by any individual or class of individuals, as required by California water rights law." (*Id.* at ¶ 38.) Plaintiffs also allege the New Well Policies "fail[] to take into account the senior priority of

dormant overlying rights holders" in contravention of California's water laws. (*Id.* at ¶ 48.) More specifically, Plaintiffs allege the New Well Policies deprive overlying water rights holders with "dormant" rights of the same rights that other overlying water rights holders actively using their rights enjoy, in contravention of California's water laws. (*Id.* at ¶¶ 49-50.)

Plaintiffs Double Vee Properties, LLC (Double Vee) and Caldera Ranch, LLC (Caldera) allege that on June 8, 2022, and Plaintiff Hundred Acre LLC (Hundred Acre) alleges that on June 17, 2022, they "filed permit applications to construct new wells on their properties." (Complaint at ¶ 40.) Plaintiffs allege these "existing permit applications should have been processed on a ministerial basis," but that Plaintiffs have been informed that Tier 1 water budgeting—which allegedly requires "commitment by the applicant to use no more than 0.3 acre-feet of water per acre serviced by the well annually"—and Tier 3 water analyses are required even though "PBES has never required such analyses as part of its ministerial well permitting scheme set out in County Code Chapter 13.12." (*Id.* at ¶¶ 41-43.) Plaintiffs do not allege these applications have been denied, only that they are "informed and believe" that the County "will withhold new well permits unless the applicant[s] agree[] to [the County's] unlawful" permitting requirements. (*Id.* at ¶ 44.) For its part, Plaintiff The Hundred Acre Wine Group, Inc. (Hundred Acre Wine Group) has not filed any permit application for a groundwater well, but alleges it would submit an application "but for the fact that it knows that the County would condition issuance of the permit on [its] acceptance of the unlawful restrictions on water use." (*Id.* at ¶ 45.)

## C.    Hundred Acre Wine Group's State Court Litigation Against the County

On or about October 6, 2022, Hundred Acre Wine Group filed a lawsuit against the County in Napa County Superior Court, *Hundred Acre Wine Group v. County of Napa*, Napa County Sup. Ct. No. 22CV001166. (Complaint at ¶ 80.) That complaint "seeks declaratory relief regarding the County's application of its conservation regulations to Hundred Acre Wine Group's removal of burned trees and vegetation following a wildfire that scorched its property." (*Id.*) "On November 28, 2022, the County filed a cross-complaint against Hundred Acre Wine Group" asserting claims for various "code violations." (*Id.* at ¶ 81.) On or about March 15, 2023, Napa County Superior Court issued a preliminary injunction in the County's favor and against Hundred

Acre Wine Group: "Plaintiff Hundred Acre and its agents, officers, employees, and/or persons acting on its behalf are enjoined, during the pendency of this action, from engaging in any activities in furtherance of agricultural use other than as necessary to maintain current conditions on the hillside north of the driveway at Hundred Acre's property located at 2355 Pickett Road, Calistoga, California ('Property') that is the subject of the dispute between the parties ('subject hillside')." (RJN No. 7 (Order after hearing on OSC re preliminary injunction).)

### III.   LEGAL STANDARD

**A.   Lack of Subject Matter Jurisdiction and FRCP 12(b)(1)**

A party may move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure (FRCP) 12(b)(1). "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The "irreducible constitutional minimum" of standing requires a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Nayab v. Capital One Bank* (USA), N.A., 942 F.3d 480, 489 (9th Cir. 2019) (quoting *Spokeo, Inc. v. Robins* (*Spokeo II*), 578 U.S. 330 (2016)). These three elements are referred to as, respectively, injury-in-fact, causation, and redressability. See *Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," which at the pleadings stage means "'clearly . . . alleg[ing] facts demonstrating' each element." *Spokeo II*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

In a "facial" attack on jurisdiction, the complaint's allegations are challenged as "insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack is resolved like "a motion to dismiss under Rule 12(b)(6): accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

/ / /

**B.    Failure to State a Claim and FRCP 12(b)(6)**

A motion to dismiss challenges the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.*

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." FRCP 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint offer a "short and plain statement of the claim showing that the pleader is entitled to relief." "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). To make such a showing, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In a motion to dismiss, all material allegations in the complaint must be taken as true. *Navarro*, 250 F.3d at 732. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

In considering a motion to dismiss, "dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citations omitted); see also *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law").

The court may dismiss a claim without leave to amend if amendment would be futile. *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F.Supp.2d 1193, 1197 (N.D. Cal. 2010). If the complaint cannot be saved by amendment because, for example, the complaint is barred as a matter of law, the Court need not grant leave to amend. *Livid Holding Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

1

## IV.   ARGUMENT

Four of Plaintiffs' claims are based on alleged violations of Constitutional or federal law, while two claims seek declarations about the lawfulness of the New Well Policies in relation to California's water laws. As discussed below, Plaintiffs' claims are time barred, or unripe, depriving this Court of jurisdiction, or fail to state valid claims, and Plaintiffs' state claims are either redundant or fail for lack of jurisdiction upon dismissal of the federal claims.

### A.   Plaintiffs' First, Second, Third, Fourth, and Fifth Claims Are Really Untimely Challenges to the County's Implementation of Policies and Procedures

Plaintiffs characterize their first three claims as constitutional challenges, while their fourth and fifth claims are for declarations of state law regarding the New Well Policies. At bottom, all of these claims challenge the County's adoption and implementation of policies and procedures that respond to a Governor's Emergency Executive Order and the adopted GSP applicable to the Napa Valley Subbasin. However, Plaintiffs failed to timely make that challenge.

California's "planning and zoning law establishes the authority of most local government entities to regulate the use of land." *Save Lafayette Trees v. City of Lafayette* (2019) 32 Cal.App.5th 148, 155. "To provide certainty for property owners and local governments regarding decisions by local agencies made pursuant to the planning and zoning law, the Legislature enacted 'a short, 90-day statute of limitations, applicable to both the filing and service of challenges to a broad range of local zoning and planning decisions.'" *Id.*; Cal. Gov. Code §§ 65009(c)(1)(E), 65901(a). The limitation has been applied to a variety of challenges to municipal decisions affecting the use of land; in *Save Lafayette Trees*, for example, the limit barred a challenge to a city's approval of a letter of agreement for tree removal: "'The language of Section 65009 is broad. It covers 'any decision' on the 'matters listed' in Sections 65901 . . ..'" *Save Lafayette Trees*, 32 Cal.App.5th at 157 (citing *Aids Healthcare Foundation, Inc. v. City & County of San Francisco* (N.D.Cal. 2016) 208 F.Supp.3d 1095).

Here, the County's Director of PBES appeared before the County's Board of Supervisors on June 7, 2022, to "request[] acceptance of and direction regarding procedures to implement the Governor's Executive Order N-7-22, which relates to well permitting during the declared drought emergency." (RJN Nos. 3-6.) Those interim policies and procedures were responsive to the EO

14

and necessary for the County to consider and issue groundwater well permits in accordance with the EO. The ninetieth day after the Board of Supervisors voted to approve these interim New Well Policies was September 5, 2022, but Plaintiffs' lawsuit was not filed until September 5, 2023—a year too late. Cal. Gov. Code § 65009(c)(1)(E); *Save Lafayette Trees*, 32 Cal.App.5th at 157. Thus, Plaintiffs' First, Second, Third, Fourth, and Fifth claims are time barred.

### B. Plaintiffs' First Claim, for Taking, Fails for Lack of Subject Matter Jurisdiction and Fails to Allege Facts Sufficient to State a Claim

Plaintiffs allege the County's implementation of its New Well Policies—specifically the interim reduced water use criteria—"constitutes a taking of Plaintiffs' groundwater rights under the Fifth Amendment to the United States Constitution." (Complaint at ¶ 58.) Plaintiffs allege that this deprivation "has substantially impaired the value of Plaintiffs' properties." (*Id.* at ¶ 59.) Plaintiffs' Complaint fails for lack of jurisdiction and because Plaintiffs fail to state a claim.

#### 1. Plaintiffs' Takings Claim is Unripe

Plaintiffs' takings claim is not ripe. Regulatory takings claims are unripe—and therefore not within the Court's jurisdiction—unless the claim stems from a "final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985) (overruled on other grounds by *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019)). That is because "until the government makes up its mind, a court will be hard pressed to determine whether the plaintiff has suffered a constitutional violation." (*Id.*) The final decision requirement "is relatively modest. All a plaintiff must show is that 'there [is] no question . . . about how the 'regulations at issue apply to the particular land in question." *Pakdel v. City & Cty. of San Francisco*, 141 S. Ct. 2226, 2228 (2021).

Here, Plaintiffs allege (or concede) that (1) for those permit applications already submitted, they remain outstanding because the County has requested additional information that Plaintiffs have not furnished, and (2) one of the Plaintiffs has not even bothered to apply for a new groundwater well permit at all. (Complaint at ¶¶ 40-45.) Plaintiffs may argue that fully applying for the requested permits would be an exercise in futility because "there is no question" any permit issued would be subject to the 0.3 acre-feet limitation. *Pakdel*, 141 S. Ct. at 2228.

However, Plaintiffs could be found to be exempt from the 0.3 acre-feet limitation if they were found to be seeking other than "new non-exempt well permits." (New Well Policies at p .8 (reduced water use criteria "will be applied to new non-exempt well permits," while "[p]ermits for replacement wells, or permits for alterations to existing wells, will require that those wells conform to water use that is no more than the current water use").) Or Plaintiffs' permit applications could be denied for reasons unrelated to the 0.3 acre-feet limitation that they complain about. For example, the EO prohibits the County from issuing certain well permits "without first determining that extraction of groundwater from the proposed well is (1) not likely to interfere with the production and functioning of existing nearby wells, and (2) not likely to cause subsidence that would adversely impact or damage nearby infrastructure." (Complaint at ¶ 33.) However, Plaintiffs do not allege that any analysis they have been asked to submit would have supported those necessary determinations and assured approval of their projects. Stated differently, despite Plaintiffs' assertion that the permits it sought were "ministerial," Plaintiff acknowledges that their permit applications require additional information unrelated to the 0.3 acre-feet limitation they challenge. Until Plaintiffs fulfill their permit applications and the County's application decisions are rendered neither the parties nor the Court will know whether Plaintiffs have suffered any constitutional violation. This defect is fatally incurable.

### 2. The Claim is Factually Deficient

The Supreme Court recognizes two broad categories of takings: physical takings such when the government "has physically taken property for itself or someone else[,] by whatever means," and regulatory takings which encompass restrictions by government on "a property owner's ability to use [their] own property. *Cedar Point Nursery v. Hassid*, ___U.S.___ (2021) (141 S.Ct. 2063, 2072). Plaintiffs' lawsuit alleges, at most, a regulatory taking.

When a regulation does not result in a physical invasion and does not deprive the property owner of all economic use of the property, a reviewing court must evaluate the regulation in light of the *Penn Central* factors: (1) the regulation's economic impact on the claimant, (2) the extent to which the regulation interferes with distinct investment-backed expectations, and (3) the character of the government action." *Penn Central Transp. Co. v. City of New York*, 438 U.S.

104, 124 (1978). A takings claim may be disposed on the basis of one or two of these factors. See *Maritrans Inc. v. United States*, 342 F.3d 1344, 1359 (Fed.Cir. 2003) (where nature of the governmental action and economic impact of the regulation did not establish a taking, the court need not consider investment-backed expectations), *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005 (1984) (takings claim disposed solely on absence of investment-backed expectations). Despite being fact specific, courts often examine *Penn Central* "factors at the motion to dismiss stage to assure plaintiffs have satisfied their burden to establish the plausibility of their claims." *Pakdel v. City & Cnty. of San Francisco* 636 F. Supp. 3d 1065, 1074-1075 (N.D.Cal. 2022).

 *Pakdel*, a recent Northern District case, is instructive on this issue. In *Pakdel*, plaintiffs challenged the enforcement of a city ordinance requiring them to offer a lifetime lease to a tenant as part of the process for converting their tenancy in common into a condominium. *Pakdel*, 636 F. Supp. 3d at 1068. Their amended complaint alleged, among other things, that the ordinances violated the Takings Clause of the Fifth Amendment. *Id.* On a motion to dismiss, the trial court considered *Penn Central* and concluded plaintiffs failed to state a claim for a regulatory taking. As for the first factor (economic impact) the trial court concluded plaintiffs' averment that the regulatory lease condition "will diminish their property's value by 'more than $500,000'" was unsupported by any facts to establish the basis for this averred diminution in value. *Id.* at 1075. As for the second factor (investment-backed expectations) the trial court similarly concluded the complaint "fails to state adequately why Plaintiffs' expectations [in this regard] were plausibly reasonable." *Id.* at 1075-1076. As for the third factor (character of the government action), the trial court observed that regulations that "adjust[] the benefits and burdens of economic life to promote the common good" are less likely to be deemed regulatory takings than those regulations that "can be characterized as a physical invasion," but concluded the plaintiffs failed to adequately identify why the regulation should fall into the latter category, rather than the former. *Id.* at 1076.

 Here, Plaintiffs' complaint is similarly defective. It makes the conclusory allegation that the County's "actions have deprived Plaintiffs of the use of their groundwater rights, which has substantially impaired the value of Plaintiffs' properties." (Complaint at ¶ 50.) However, no facts are pleaded to substantiate or quantify this claim. Thus, *Penn Station's* first factor weighs against

them. Plaintiffs' Complaint is similarly devoid of any facts that would support *Penn Station's* investment-backed expectations. Thus, this factor weighs against Plaintiffs' claim. Finally, Plaintiff has not alleged why the regulatory taking should be considered a physical taking rather than promoting the common good, a difficult (if not impossible) task in light of Plaintiffs' concession that the County's actions were taken in response to the Governor's drought-related Emergency Order. Thus, the third *Penn Station* factor also weighs against Plaintiffs.

California authority also undermines Plaintiffs' takings claim. In *Allegretti & Co. v. County of Imperial* (2006) 138 Cal. App. 4th 1261, a county approved a conditional use permit to activate a well on the condition, imposed under a County ordinance, that Allegretti extract no more than 12,000 acre-feet per year of water from the aquifer underlying its property. *Id.* at 1267. Allegretti alleged that a "regulatory taking resulted from County's requirement that Allegretti obtain a permit and show reactivation of its well would not significantly or adversely affect either the environment or the groundwater basin." *Id.* at 1268. The trial court disagreed and at trial entered judgment in the County's favor at the close of Allegretti's liability case after evaluating the *Penn Central* factors and concluded no taking occurred. *Id.* at 1277-1279.

## C. Plaintiffs' Second Claim, for Alleged Equal Protection Violations, Fails to Allege Facts Sufficient to State a Claim

Plaintiffs allege the New Well Policies discriminate between "existing permit holders" and "dormant overlying groundwater rights holders," the latter which are treated "as a subclass of overlying groundwater rights holders within Napa County." (Complaint at ¶ 62.) This claim fails to allege facts sufficient to state a claim.

"[Z]oning and land use issues do not implicate fundamental rights." *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1239 (9th Cir. 1994) (citation omitted). Therefore, in the absence of protected class allegations, in order to establish an equal protection violation as a result of a land use decision Plaintiffs must prove that their property "has been treated differently from similarly situated property and whether there is any rational basis for such treatment." *Kawaoka*, 17 F.3d at 1240. For example, favoring one land developer seeking to rezone property over another simply over the location of the developments may state an equal protection claim. *Jacobs, Visconsi & Jacobs Co. v. Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1991). However, even if

18

there is different treatment of similarly situated properties, there may be rational bases for such treatment. E.g., *Christian Gospel Church, Inc. v. San Francisco*, 896 F.2d 1221, 1226 (9th Cir. 1990) (City had "rational basis for a law requiring all places of public assembly to obtain a conditional use permit before establishment in certain neighborhoods [because t]hese activities bring undesired noise and traffic problems to a neighborhood").

Here, Plaintiffs do not allege (and likely cannot) that they belong to any protected or suspect class. Thus, they must allege (and ultimately demonstrate) different treatment of their property without any rational basis. Plaintiffs allege that they are dormant groundwater rights holders being treated differently than groundwater rights users actively exercising those rights. (Complaint at ¶¶ 61-62.) However, a more accurate comparison is the treatment of Plaintiffs and *other* dormant groundwater rights holders. As compared to other dormant groundwater users seeking to apply for a new well permit, Plaintiffs are treated identically and Plaintiffs do not allege otherwise. But even as compared to groundwater rights users actively using those rights, the different treatment Plaintiffs are allegedly experiencing is a result of the County's response to the Governor's drought-related Emergency Executive Order. Thus, there is a rational basis for the County's interim 0.3 acre-feet limitation on new well applicants, which treats "differently" dormant groundwater rights holders and active groundwater rights holders. See *Allegretti*, 138 Cal. App. 4th at 1277-1279 ("although an overlying user . . . may have superior rights to others lacking legal priority, [such a] water 'right' is nonetheless restricted to a reasonable beneficial use consistent with article X, section 2 of the California Constitution"); see also *Antelope Valley Groundwater Cases* (2021) 62 Cal.App.5th 992, 1028, 1030 ("the protection of the interests of correlative rights holders who are actually using all available water for reasonable and beneficial purposes may (under appropriate circumstances) permit a court to craft a physical solution which recognizes the rights held by overliers but *subordinates* any future use by those correlative rights holders to their fellow correlative rights holders who are presently using the available supply").

Accordingly, Plaintiffs' second claim should be dismissed without leave to amend.

/ / /

/ / /

**D.    Plaintiffs' Third Claim, for Alleged Due Process Violations, Fails for Lack of Subject Matter Jurisdiction, and Fails to Allege Facts Sufficient to State a Claim**

Plaintiffs allege that Director Bordona "has implemented a policy or custom of denying dormant overlying water rights holders access to, and use of, their water rights," and refuses to process Plaintiffs' well permit applications in violation of the Fourteenth and Fifth Amendments, and that Plaintiffs have "been deprived of their rights to make use of their valuable water rights" as a consequence. (Complaint at ¶¶ 66-69.) It is unclear whether this is intended to be a procedural due process claim or a substantive one or both. However, this claim fails to state a claim because, *inter alia*, it is preempted by Plaintiffs' taking claims, unripe.

**1.    The Due Process Claim is Unripe**

Just as ripeness is a requirement for a takings claim, the "same is true for due process claims – allegations of harm that is yet to be experienced (i.e., by complaining of permit denials without actually applying for one) are unripe." *Thomas v. Cnty. Of Humboldt*, 2023 U.S.Dist.LEXIS 83938, at *58-59 (N.D.Cal. May 12, 2023, No. 22-cv-05725-RMI) (citing *Halverson v. Skagit County*, 42 F.3d 1257, 1261 (9th Cir. 1994)), and *Herrington v. County of Sonoma*, 857 F.2d 567, 569 (9th Cir. 1988); see also *Herrington*, 857 F.2d at 569 (equal protection and due process challenges to county actions regarding land use become ripe when the plaintiff has received a final decision which inflicts concrete harm). Accordingly, for the reasons discussed above in the context of the takings claim, this due process claim is also unripe.

**2.    The Due Process Claim is Preempted**

The Fifth Amendment precludes due process claims that fall within the "three basic categories" governing takings jurisprudence: (1) physical invasion of property, (2) deprivation of all economically beneficial use, or (3) the *Penn Central* analysis. *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 855 (9th Cir. 2007) (to the "extent a property owner's complaint falls within [a] recognized application of the Takings Clause . . . the claim must be analyzed under the Fifth Amendment whether or not it proves successful"). Plaintiffs allege that the "custom or policy" underlying their third claim "violates the Fourteenth and Fifth Amendments of the United States Constitution, *as alleged above*." (Complaint at ¶ 66 (emphasis added).) Thus, Plaintiffs'

due process claim relies on allegations supporting their takings claim, which supports finding that the due process claim is subsumed by the takings claim.

### 3. The Claim is Factually Deficient

If Plaintiffs' due process claim is not preempted or unripe, it is not sufficiently pled. To state a procedural due process claim, a plaintiff must allege "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Fikre v. Fed. Bureau of Investigation*, 35 F.4th 762, 776 (9th Cir. 2022) (internal brackets omitted). In the context of land use, there need not be a final decision on land use before a plaintiff can bring a procedural due process claim; however, it must be "clear that a distinct deprivation of a constitutionally protected interest in liberty or property has already occurred." *Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 983-984 (9th Cir. 2011). Here, as discussed in the context of ripeness issues, Plaintiffs have not completed their well permit submittals (or applied in the first instance) and it remains to be seen whether or not the permits they applied for would be granted or denied for reasons unrelated to the 0.3 acre-feet limitation that the complaint about, or found to be exempt altogether.

Substantive due process protection is often reserved for the vindication of fundamental rights, such as those related to bodily integrity, family, procreation, and marriage. See *Albright v. Oliver*, 510 U.S. 266, 272 (1994). In cases that do not involve such fundamental rights, courts "do not require that the government's action actually advance its stated purposes, but merely look to see whether the government could have had a legitimate reason for acting as it did." *Halverson*, 42 F.3d at 1262. Substantive due process ensures that property owners have the "right to be free of arbitrary or irrational zoning actions." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263 (1977). However, the standard for determining if governmental action is constitutionally arbitrary is "exceedingly high." *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008). This is because a due process claim lies when a "land use action lacks any substantial relation to the public health, safety, or general welfare." *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 484 (9th Cir. 2008). Thus, "[t]he irreducible minimum of a substantive due process claim challenging land use regulation is failure to advance any governmental purpose." *Id.*; see

also *Halverson*, 42 F.3d at 1262 (explaining this "heavy burden" requires the plaintiff demonstrate that the government "could have had no legitimate reason for its decision").

Plaintiffs' complaint discloses the reason for the County's New Well Policies: they were developed in response to the Governor's drought-related Emergency Executive Order that commanded counties to take certain acts with respect to groundwater permitting. (Complaint at ¶¶ 34-35.) They are also consistent with the County's interest in groundwater management, as set forth in the County Code. It is difficult to view the disputed limitations as anything other than advancing a legitimate County (and state) interest. Further, Plaintiffs do not appear to challenge the imposition of all extraction limits; to the contrary, Plaintiffs reference with approval the 1.0 acre-feet limit that they hope to enjoy. Instead, however, Plaintiffs appear to complain only about the numeric value arrived at by the County for new well permits. Plaintiffs' objection to the amount of the limitation rather than the limitation itself arguably concedes that the limitation does serve a legitimate government purpose. Accordingly, Plaintiffs' third claim should be dismissed.

**E.    Plaintiffs' Fourth and Fifth Claims, for Declaratory Relief, Fail to State Claims, and are Outside of the Court's Jurisdiction if the Federal Claims Fail**

Plaintiffs' Fourth and Fifth Claims are for declaratory relief. The Fourth Claim alleges a dispute regarding the lawfulness of the New Well Policies as respects California water law. (Complaint at ¶¶ 69-74.) The Fifth Claim alleges a dispute about the conditioning of well permits on a commitment to limit extractions to 0.3 acre-feet. (Complaint at ¶¶ 75-79.) The claims are unnecessary in light of Plaintiffs other claims, or they fail for want of jurisdiction if the Court dismisses Plaintiffs' federal claims as it should.

A claim for declaratory relief is "unnecessary where an adequate remedy exists under some other cause of action." *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009). If Plaintiffs can state valid claims for alleged violations of constitutional and federal laws (which they have so far failed to do), then their declaratory relief claims would be superfluous and unnecessary. See *Huynh v. Quora, Inc.*, 2019 U.S.Dist.LEXIS 235733, at *36-37 (N.D.Cal. Dec. 19, 2019, No. 18-cv-07597-BLF) (declaratory relief unnecessary as "commensurate with the relief sought through their other causes of action"); see *Miller v. Sec.*

*Life of Denver Ins. Co.*, 2012 U.S.Dist.LEXIS 41057, at *15-16 (N.D.Cal. Mar. 26, 2012, No. C 11-1175 PJH) (duplicative declaratory relief claim under Cal. Code of Civil Procedure § 1060).

If the Court agrees that Plaintiffs' claims based on alleged constitutional and federal law violations are untenable, then the Court's supplemental jurisdiction over these declaratory relief claims would end and these claims are subject to dismissal on that basis (i.e., lack of subject matter jurisdiction). *Ferrari v. Mercedes-Benz USA, LLC*, 2016 U.S.Dist.LEXIS 171559, at *3 (N.D.Cal. Dec. 12, 2016, No. 15-cv-04379-YGR) (where federal claims "cannot be stated, the basis for the Court's alleged supplemental jurisdiction over the remaining state law claims is lacking" and those state law claims are properly dismissed).

Ultimately, if Plaintiffs can state valid claims for alleged violations of constitutional and federal laws (which they have so far failed to do), then their declaratory relief claims would be superfluous and unnecessary. However, if the Court agrees that Plaintiffs' federal claims are subject to dismissal, then so too are Plaintiffs' declaratory relief claims for want of jurisdiction. Thus, Plaintiffs' fourth and fifth claims should be dismissed without leave to amend.

**F.   Hundred Acre Wine Group's Sixth Claim, for Retaliation, Fails to State a Claim**

Plaintiff Hundred Acre Wine Group alleges that the County's filing of a cross-complaint in *Hundred Acre Wine Group v. County of Napa*, Napa County Sup. Ct. No. 22CV001166, was retaliation for Hundred Acre Wine Group's filing that lawsuit in the first place. (Complaint at ¶¶ 80-87.) Defendants are immune from this claim.

The Noerr-Pennington doctrine provides absolute immunity for statutory liability for conduct when petitioning the government for redress. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). Immunity extends to communications made to the court during the course of a lawsuit, including "a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something." *Id.* at 933 (citation omitted). The Noerr-Pennington doctrine "immunizes petitions directed at any branch of government, including the executive, legislative, judicial and administrative agencies," and extends to political subdivisions that petition other government entities. *Manistee Town Center v. City of Glendale*, 227 F.3d 1090, 1092-1093 (9th

23

Cir. 2000). The doctrine "applies to claims under 42 U.S.C. § 1983 that are based on the petitioning of public authorities." *Id.* at 1092. However, Noerr-Pennington immunity does not apply to "sham litigation" conduct, i.e., (1) where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; (2) where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; or (3) if the allegedly unlawful conduct consists of making intentional misrepresentations to the court. *Sosa*, 437 F.3d at 938.

Here, Hundred Acre Wine Group's claim makes clear that it arises from the County's petitioning the government for redress, i.e., a cross-complaint filed in state court. Thus, Noerr-Pennington immunity applies to the claim unless a "sham litigation" exception exists. However, the complaint does not include any allegations to suggest that exception applies. Nor could it: the County's success in that litigation—including obtaining preliminary injunctive relief—demonstrates the propriety of the County's conduct in asserting the cross-complaint against Hundred Acre Wine Group in Hundred Acre Wine Group's lawsuit against the County. Accordingly, Hundred Acre Wine Group's claim fails because Defendants are immune from the claim, and this Court should dismiss the sixth claim for relief without leave to amend.

## V. <u>CONCLUSION</u>

For the reason set forth above, Defendants respectfully request that the Court dismiss each of Plaintiffs' six claims for relief, and the Complaint in its entirety, without leave to amend.


DATED: October 30, 2023          **PARIS KINCAID WASIEWSKI, LLP**

                                 By:
                                 _____
                                 VALERIE C. KINCAID
                                 JONATHAN R. MARZ

                                 Attorneys for Defendants
                                 NAPA COUNTY and BRIAN BORDONA